

INSTITUTE FOR JUSTICE

September 12, 2025

<u>Via ACMS</u>
Molly Dwyer
Clerk of Court
Office of the Clerk
U.S. Court of Appeals for the Ninth Circuit
95 7th Street
San Francisco, CA 94103

Re:   *Novedades y Servicios, Inc., et al. v. Financial Crimes Enforcement Network, et al.*
      No. 25-4238
      Supplemental authority

Dear Ms. Dwyer:

    Plaintiffs-Appellees write to inform the Court that FinCEN has (in its words) "reissued" the GTO at issue in this case—extending the Border GTO beyond its September 9 expiration date and setting a new expiration date of March 6, 2026. Like the initial Border GTO, the reissued Border GTO was announced via press release, *see* Exhibit 1, and published in the Federal Register, s*ee* Exhibit 2 (90 Fed. Reg. 43557 (Sept. 10, 2025)). Because Plaintiffs-Appellees submitted their response brief in support of the preliminary injunction before the GTO was reissued, Plaintiffs had no opportunity to address this development in their brief.

    In the reissued Border GTO, FinCEN recognizes that the preliminary injunction at issue in this appeal applies to bar enforcement of the reissued Border GTO. *See* 90 Fed. Reg. at 43558 n.8 ("As of this date, the government is enjoined from applying the Geographic Targeting Order of March 14, 2025, to MSBs in Imperial County and San Diego County. Thus, until that injunction is lifted, MSBs in these counties are exempt from the definition of Covered Businesses for purposes of the requirements of this Order."); *see also* Exhibit 3 at 3 (FinCEN FAQs). There is therefore no dispute that the preliminary injunction has continued effect, and this appeal remains live.

    When reissuing the Border GTO, the government also expanded it—applying it to additional geographic areas. FinCEN offered no explanation for that expansion, and FinCEN did not acknowledge any of the concerns raised by the three separate courts that have found the GTO unlawful. Separately, FinCEN also modified the Border GTO to raise the reporting threshold from $200 to $1,000. FinCEN's unexplained decision to reissue the Border GTO without notice, individualized factfinding, or any opportunity to be heard confirms that this is a rule that has been promulgated without following proper rulemaking procedures.

The government's reply brief is still forthcoming. To the extent the Court has questions about the effect of the reissued Border GTO, the Court may wish to afford Plaintiffs an opportunity to file a supplemental brief.

Sincerely,

/s/ Robert Johnson
*Counsel for Plaintiffs*

CC (via ACMS): Brett A. Shumate
Adam Gordon
Sharon Swingle
Simone G. Jerome

Attachment

# Exhibit 1

🇺🇸 An official website of the United States government  Here's how you know



Financial Crimes Enforcement Network

HOME    NEWS    FINCEN ISSUES MODIFIED SOUTHW...

# FinCEN Issues Modified Southwest Border Geographic Targeting Order

**Immediate Release:**  September 08, 2025

**WASHINGTON** — Today, the U.S. Department of the Treasury's Financial Crimes Enforcement Network (FinCEN) is reissuing a modified Geographic Targeting Order (GTO) to combat illicit cartel and other criminal activity, including money laundering, along the southwest border of the United States. As modified, the GTO requires certain money services businesses to file Currency Transaction Reports with FinCEN for cash transactions between $1,000 and $10,000 occurring in specific counties and ZIP codes.

"FinCEN is deeply focused on combatting cartels, drug traffickers, and other criminal actors along the southwest border that present significant risks to both the U.S. financial system and to public health," said FinCEN Director Andrea Gacki. "The reports generated by this Geographic Targeting Order will continue to help law enforcement investigate powerful illicit networks operating along the southwest border and beyond."

Combatting drug cartels and stopping the flow of deadly drugs into the United States is one of the Administration's highest priorities. In January, President Donald J. Trump issued an Executive Order creating a process by which certain cartels and other organizations would be designated as Foreign Terrorist Organizations (FTOs) and/or Specially Designated Global Terrorists (SDGTs). Accordingly, in February, the U.S. Departments of the Treasury and State designated eight organizations, including six major Mexico-based drug cartels, as FTOs and SDGTs.

In March, FinCEN published a GTO requiring money services businesses (MSBs) located in 30 ZIP codes in California and Texas near the southwest border to file Currency Transaction Reports with FinCEN at a $200 threshold, in connection with cash transactions. That GTO is effective through September 9, 2025.

FinCEN is now issuing a new GTO to target illicit transactions, while mitigating burden on legitimate businesses. The terms of this GTO are effective September 10, 2025, through March 6, 2026. The GTO provides a 30-day compliance period for MSBs that were not required to report under the March GTO, which will not need to begin filing reports until October 10, 2025. For all MSBs required to report under the GTO, the filing deadline is extended from the standard 15 days for Currency Transaction Reports to 30 days, for the entire period of the GTO.

This reissued GTO will continue to ensure law enforcement can deny individuals and entities associated with these groups access to the U.S. financial system.

The GTO covers the following geographic locations in Arizona, California, and Texas:

- Santa Cruz County, Arizona
- Yuma County, Arizona
- California ZIP Codes (all within Imperial County): 92231, 92249, 92281, 92283
- California ZIP Codes (all within San Diego County): 91910, 92101, 92113, 92117, 92126, 92154, 92173
- Cameron County, Texas
- El Paso County, Texas
- Hidalgo County, Texas
- Maverick County, Texas
- Webb County, Texas

Any questions about the southwest border GTO should be directed to www.fincen.gov/contact.

A copy of the GTO is available here.

Frequently asked questions regarding the GTO are available here.

###

News

Press Releases

Readouts

Speeches

Testimony

Enforcement Actions

SAR Technical Bulletins

**Subscribe to FinCEN News Updates**



Home

Resources

About

Newsroom

Careers

Contact

USA.gov | Regulations.gov | Treasury.gov | IRS.gov | Freedom of Information Act (FOIA) | NO FEAR Act | Vote.gov | Accessibility | Office of Equal Opportunity | Privacy Policy | Public Posting Notice of Finding of Discrimination | Security and Vulnerability Disclosure Policies (VDP) | Office of Inspector General

# Exhibit 2

# DEPARTMENT OF THE TREASURY

## Office of Foreign Assets Control

### 31 CFR Part 591

### Publication of Venezuela Sanctions Regulations Web General License 5S

**AGENCY:** Office of Foreign Assets Control, Treasury.
**ACTION:** Publication of a web general license.

**SUMMARY:** The Department of the Treasury's Office of Foreign Assets Control (OFAC) is publishing a general license (GL) issued pursuant to the Venezuela Sanctions Regulations: GL 5S, which was previously made available on OFAC's website.

**DATES:** GL 5S was issued on June 20, 2025. See **SUPPLEMENTARY INFORMATION** for additional relevant dates.

**FOR FURTHER INFORMATION CONTACT:**
OFAC: Assistant Director for Regulatory Affairs, 202–622–4855; or *https://ofac.treasury.gov/contact-ofac*.

**SUPPLEMENTARY INFORMATION:**

### Electronic Availability

This document and additional information concerning OFAC are available on OFAC's website: *https://ofac.treasury.gov/*.

### Background

On June 20, 2025, OFAC issued GL 5S to authorize certain transactions otherwise prohibited by the Venezuela Sanctions Regulations (VSR), 31 CFR part 591. GL 5S replaced and superseded GL 5R, which was issued on March 6, 2025. This GL was made available on OFAC's website (*https://ofac.treasury.gov*) when it was issued. The text of this GL is provided below.

### OFFICE OF FOREIGN ASSETS CONTROL

### Venezuela Sanctions Regulations

### 31 CFR Part 591

### GENERAL LICENSE NO. 5S

### Authorizing Certain Transactions Related to the Petróleos de Venezuela, S.A. 2020 8.5 Percent Bond on or After December 20, 2025

(a) Except as provided in paragraph (b) of this general license, on or after December 20, 2025, all transactions related to, the provision of financing for, and other dealings in the Petróleos de Venezuela, S.A. 2020 8.5 Percent Bond that would be prohibited by subsection l(a)(iii) of Executive Order (E.O.) 13835 of May 21, 2018, as amended by E.O. 13857 of January 25, 2019, and incorporated into the Venezuela Sanctions Regulations, 31 CFR part 591 (the VSR), are authorized.

(b) This general license does not authorize any transactions or activities otherwise prohibited by the VSR, or any other part of 31 CFR chapter V.

(c) Effective June 20, 2025, General License No. 5R, dated March 6, 2025, is replaced and superseded in its entirety by this General License No. 5S.

Lisa M. Palluconi,
*Acting Director, Office of Foreign Assets Control.*

Dated: June 20, 2025.

Bradley T. Smith,
*Director, Office of Foreign Assets Control.*
[FR Doc. 2025–17392 Filed 9–9–25; 8:45 am]
**BILLING CODE 4810–AL–P**

# DEPARTMENT OF THE TREASURY

## Financial Crimes Enforcement Network

### 31 CFR Part 1010

### Geographic Targeting Order Imposing Recordkeeping and Reporting Requirements on Certain Money Services Businesses Along the Southwest Border

**AGENCY:** Financial Crimes Enforcement Network (FinCEN), Treasury.
**ACTION:** Order.

**SUMMARY:** FinCEN is issuing this Geographic Targeting Order, requiring certain money services businesses along the southwest border of the United States to report and retain records of transactions in currency of $1,000 or more, but not more than $10,000, and to verify the identity of persons presenting such transactions. This Order follows a previously issued Geographic Targeting Order, which required reporting of transactions in currency of more than $200, but not more than $10,000.

**DATES:**
*Effective Date:* This action is effective September 10, 2025.
*Compliance Date:* The compliance date for persons that were not Covered Businesses under the Geographic Targeting Order published by FinCEN on March 14, 2025 (90 FR 12106) is October 10, 2025.

**FOR FURTHER INFORMATION CONTACT:**
FinCEN's Regulatory Support Section by submitting an inquiry at *www.fincen.gov/contact*.

**SUPPLEMENTARY INFORMATION:**

## I. Background

If the Secretary of the Treasury (Secretary) finds, upon his own initiative or at the request of an appropriate Federal or State law enforcement official, that reasonable grounds exist for concluding that additional recordkeeping and reporting requirements are necessary to carry out the purposes of the Bank Secrecy Act (BSA)[1] or to prevent evasions thereof, the Secretary may issue a Geographic Targeting Order (GTO) requiring any domestic financial institution or group of domestic financial institutions, or any domestic nonfinancial trade or business or group of domestic nonfinancial trades or businesses, in a geographic area to obtain such information as the Secretary may describe in such GTO concerning any transaction in which such financial institution or nonfinancial trade or business is involved in for the payment, receipt, or transfer of funds (as the Secretary may describe in such GTO), and concerning any other person participating in such transaction.[2] For any such transaction, the Secretary may require the financial institution or nonfinancial trade or business to maintain a record and/or file a report in the manner and to the extent specified.[3] The maximum effective period for a GTO is 180 days unless renewed.[4] The authority of the Secretary to issue a GTO has been delegated to the Director of FinCEN (Director).[5]

The Director finds that reasonable grounds exist for concluding that the additional recordkeeping and reporting requirements set forth in the GTO contained in this document (the "Order") are necessary to carry out the purposes of the BSA or to prevent evasions thereof. This action is being taken in furtherance of Treasury's efforts to combat illicit finance by drug cartels and other illicit actors along the southwest border of United States. The Order does not alter any existing BSA obligation of a Covered Business (as defined in the Order), except as otherwise noted in the Order itself. Thus, for example, a Covered Business must continue to file Currency Transaction Reports (CTRs) for transactions in currency above $10,000 and Suspicious Activity Reports (SARs) where appropriate and in accordance with the BSA and applicable regulations. Although the dollar

---

[1] The Bank Secrecy Act, as amended, is codified at 12 U.S.C. 1829b, 1951–1960 and 31 U.S.C. 5311–5314, 5316–5336 and includes other authorities reflected in notes thereto. Regulations implementing the BSA appear at 31 CFR chapter X. The Secretary of the Treasury's authority to administer the BSA has been delegated to the Director of FinCEN. *See* Treasury Order 180–01 (Jan. 14, 2020).
[2] 31 U.S.C. 5326(a); *see also* 31 CFR 1010.370.
[3] 31 U.S.C. 5326(a).
[4] 31 U.S.C. 5326(d).
[5] Treasury Order 180–01 (Jan. 14, 2020).

thresholds for filing SARs in the SAR regulation applicable to Covered Businesses remains the same (as low as $2,000),[6] FinCEN encourages the voluntary filing of SARs where appropriate to report transactions conducted to evade the $1,000 reporting threshold imposed by the Order.

## II. Geographic Targeting Order

*A. Businesses and Transactions Covered by This Order*

1. For purposes of this Order, the ''Covered Business'' means a money services business, as defined in 31 CFR 1010.100(ff), located in the Covered Geographic Area, except, for the period during which an applicable injunction remains in force, any money services business to which the government is enjoined by court order from applying the Geographic Targeting Order published by FinCEN on March 14, 2025 (90 FR 12106).

2. For purposes of this Order, a ''Covered Transaction'' means each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to the Covered Business which involves a transaction in currency, of $1,000 or more, but not more than $10,000.

3. For purposes of this Order, a ''Covered Geographic Area'' means:
   a. The following counties in Arizona:
   i. Santa Cruz County, Arizona; and
   ii. Yuma County, Arizona;
   b. The following counties in Texas:
   i. Cameron County, Texas;
   ii. El Paso County, Texas;
   iii. Hidalgo County, Texas;
   iv. Maverick County, Texas; and
   v. Webb County, Texas;[7] and
   b. The following ZIP Codes in California:
   i. 92231, 92249, 92281, and 92283 (Imperial County, California); and
   ii. 91910, 92101, 92113, 92117, 92126, 92154, and 92173 (San Diego County, California).[8]

4. All terms used but not otherwise defined herein shall have the same meaning set forth in part 1010 of chapter X of subtitle B of title 31 of the Code of Federal Regulations.

---

[6] 31 CFR 1022.320.

[7] As of this date, the government is enjoined from applying the Geographic Targeting Order of March 14, 2025, to certain MSBs in Texas. Thus, until the relevant injunctions are lifted, those MSBs are exempt from the definition of Covered Businesses for purposes of the requirements of this Order.

[8] As of this date, the government is enjoined from applying the Geographic Targeting Order of March 14, 2025, to MSBs in Imperial County and San Diego County. Thus, until that injunction is lifted, MSBs in these counties are exempt from the definition of Covered Businesses for purposes of the requirements of this Order.

*B. Reports Required To Be Filed by the Covered Business*

5. Except as otherwise set forth in this Order, if the Covered Business is involved in a Covered Transaction, then the Covered Business shall report the Covered Transaction to FinCEN on a Currency Transaction Report within 30 days following the day on which the Covered Transaction occurred. In the case of the U.S. Postal Service, the obligation contained in the preceding sentence shall not apply to payments or transfers made solely in connection with the purchase of postage or philatelic products.

**Note:** When submitting the report, the Covered Business may receive a warning that the transaction is below $10,000. The Covered Business shall ignore the warning and continue with the submission.

6. Each report filed pursuant to this Order must be: (a) completed in accordance with the terms of this Order and the Currency Transaction Report instructions (when those terms and those instructions conflict, the terms of this Order prevail); and (b) e-filed though the BSA E-Filing System.[9]

7. Before concluding a Covered Transaction, the Covered Business must comply with the identification requirements set forth at 31 CFR 1010.312, including the requirement that the specific identifying information (*e.g.,* the account number of the credit card, the driver's license number) used in verifying the identity of the customer shall be recorded on the Currency Transaction Report, and the mere notation of ''known customer'' or ''bank signature card on file'' on the report is prohibited. For purposes of this requirement, the Covered Business need not identify employees of armored car services.

8. The Covered Business is not required to file a report otherwise required under this Order on a Covered Transaction between the Covered Business and a commercial bank.

9. Part IV of the Currency Transaction Report shall contain the following information in Field 45: ''MSB0925GTO''.

*C. Order Period*

The terms of this Order are effective beginning September 10, 2025 and ending on March 6, 2026. The compliance date for persons that were

---

[9] To electronically file a Currency Transaction Report, a Covered Business will need a BSA E-Filing User account. To create a BSA E-Filing User account, please visit *https://bsaefiling.fincen.treas.gov/Enroll_Now.html.* For more information on E-Filing, please visit *https://bsaefiling.fincen.treas.gov/AboutBsa.html.*

not Covered Businesses under the Geographic Targeting Order published by FinCEN on March 14, 2025 (90 FR 12106) is October 10, 2025.

*D. Retention of Records*

The Covered Business must: (a) retain all reports filed to comply with this Order and any other records relating to compliance with this Order for a period of five years from the last day that this Order is effective (including any renewals of this Order); (b) store all such records in a manner accessible within a reasonable period of time; and (c) make such records available to FinCEN, or any other appropriate law enforcement or regulatory agency, upon request, in accordance with applicable law.

*E. No Effect on Other Provision of the BSA or Its Implementing Regulations*

Nothing in this Order otherwise modifies or affects any provision of the BSA or the regulations implementing the BSA to the extent not expressly stated herein.

*F. Confidentiality*

This Order is being publicly issued, and its terms are not confidential.

*G. Compliance*

The Covered Business must supervise, and is responsible for, compliance by each of its officers, directors, employees, and agents with the terms of this Order. The Covered Business must transmit this Order to each of its agents located in the Covered Geographic Area. The Covered Business must also transmit this Order to its Chief Executive Officer or other similarly acting manager.

*H. Penalties for Noncompliance*

The Covered Business, and any of its officers, directors, employees, and agents, may be liable, without limitation, for civil or criminal penalties for violating any of the terms of this Order.

*I. Validity of Order*

Any judicial determination that any provision of this Order is invalid shall not affect the validity of any other provision of this Order, and each other provision shall thereafter remain in full force and effect. A copy of this Order carries the full force and effect of an original signed Order.

*J. Paperwork Reduction Act*

The collection of information subject to the Paperwork Reduction Act contained in this Order has been approved by the Office of Management and Budget (OMB) and assigned OMB

control number 1506–0056. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.

*K. Questions*

All questions about the Order should be directed to FinCEN at *https://www.fincen.gov/contact.*

(Authority: 31 U.S.C. 5326)

**Andrea M. Gacki,**
*Director, Financial Crimes Enforcement Network.*

[FR Doc. 2025–17371 Filed 9–9–25; 8:45 am]

**BILLING CODE 4810–02–P**

---

**DEPARTMENT OF THE TREASURY**

**Office of Foreign Assets Control**

**31 CFR Chapter V**

**Publication of Iranian Transactions and Sanctions Regulations Web General License**

**AGENCY:** Office of Foreign Assets Control, Treasury.

**ACTION:** Publication of a web general license.

**SUMMARY:** The Department of the Treasury's Office of Foreign Assets Control (OFAC) is publishing a general license (GL) issued in the Iran sanctions program: GL Q. This GL was previously made available on OFAC's website.

**DATES:** GL Q was issued on May 20, 2025. See **SUPPLEMENTARY INFORMATION** for additional relevant dates.

**FOR FURTHER INFORMATION CONTACT:**
OFAC: Assistant Director for Regulatory Affairs, 202–622–4855; or *https://ofac.treasury.gov/contact-ofac.*

**SUPPLEMENTARY INFORMATION:**

**Electronic Availability**

This document and additional information concerning OFAC are available on OFAC's website: *https://ofac.treasury.gov/.*

**Background**

On May 20, 2025, OFAC issued GL Q to authorize certain transactions otherwise prohibited by Executive Order 13902 of January 10, 2020 (''Imposing Sanctions With Respect to Additional Sectors of Iran,'' 85 FR 2003, January 14, 2020). GL Q was made available on OFAC's website (*https://ofac.treasury.gov*) when it was issued. The text of this GL is provided below.

**OFFICE OF FOREIGN ASSETS CONTROL**

**Executive Order 13902 of January 10, 2020**

**Imposing Sanctions With Respect to Additional Sectors of Iran**

**GENERAL LICENSE Q**

**Authorizing Limited Safety, Environmental, and Sale Transactions Involving the Blocked Vessel M.V. Tinos I While Located in the United States**

(a) Except as provided in paragraph (b) of this general license, all transactions prohibited by Executive Order (E.O.) 13902 involving the vessel M.V. Tinos I (IMO: 9969821) (Tinos I), Meisam Emamjomeh, or Pearl Petrochemical FZE, or any entity in which any of the foregoing owns, directly or indirectly, individually or in the aggregate, a 50 percent or greater interest, that are ordinarily incident and necessary to one or more of the following activities are authorized, provided that any payments to a blocked person must be made into a blocked interest-bearing account at a U.S. financial institution:

(1) The safe docking and anchoring of the Tinos I in port;

(2) The preservation of the health and safety of the crew of the Tinos I;

(3) Emergency repairs and environmental mitigation or protection activities related to the Tinos I;

(4) The provision of vessel management, bunkering, pilotage, towing, insurance, classification, flagging, registration, crewing, or port agency services for the Tinos I, as well as other services necessary to maintain normal vessel standards for the Tinos I; or

(5) The sale of the Tinos I, provided the net proceeds of the sale be placed into a blocked interest-bearing account at a U.S. financial institution.

Note to paragraph (a)(5). Transactions authorized by paragraph (a)(5) include: bidding on the purchase of the vessel; paying deposits; providing financing, insurance, or funding in connection with the purchase; and, in furtherance of the sale of the vessel, repairing or modifying the vessel for commercial use and hiring surveyors to inspect the vessel.

(b) This general license does not authorize:

(1) The entry into any new commercial contracts involving the property or interests in property of any blocked persons, including the blocked persons described in paragraph (a) of this general license, except as authorized by paragraph (a);

(2) Any transaction involving the Tinos I when the vessel is located outside of the United States, including its territorial sea;

(3) Any debit to a blocked account; or

(4) Any transactions otherwise prohibited by E.O. 13902 or any part of 31 CFR chapter V, other than transactions involving the blocked persons described in paragraph (a) of this general license, unless separately authorized.

Lisa M. Palluconi,
*Acting Director, Office of Foreign Assets Control.*

Dated: May 20, 2025.

**Bradley T. Smith,**
*Director, Office of Foreign Assets Control.*

**Editorial Note:** This document was received for publication by the Office of the Federal Register on September 8, 2025.

[FR Doc. 2025–17395 Filed 9–9–25; 8:45 am]

**BILLING CODE 4810–AL–P**

---

**DEPARTMENT OF HOMELAND SECURITY**

**Coast Guard**

**33 CFR Part 100**

[Docket No. USCG–2025–0664]

**Special Local Regulation; Marine Events Within the Eleventh Coast Guard District—San Diego Bayfair**

**AGENCY:** Coast Guard, DHS.

**ACTION:** Notification of enforcement of regulation.

**SUMMARY:** The Coast Guard will enforce the San Diego Bayfair special local regulation on the waters of Mission Bay, California, from September 12, 2025, through September 14, 2025. This special local regulation is necessary to provide for the safety of the participants, crew, spectators, sponsor vessels, and general users of the waterway. During the enforcement period, persons and vessels are prohibited from anchoring, blocking, loitering, or impeding within this regulated area unless authorized by the Captain of the Port, or his designated representative.

**DATES:** The regulation in 33 CFR 100.1101, Table 1 to § 100.1101, Item No. 9, will be enforced from 6 a.m. until 6 p.m., each day from September 12, 2025, through September 14, 2025.

**FOR FURTHER INFORMATION CONTACT:** If you have questions about this notification of enforcement, call or email Lieutenant Shelley Turner, Waterways Management, U.S. Coast

# Exhibit 3



Financial Crimes Enforcement Network
U.S. Department of the Treasury

Washington, D.C. 20220

## FREQUENTLY ASKED QUESTIONS

**Issued:  September 8, 2025**

**<u>Subject:  Issuance of a Geographic Targeting Order Imposing Additional Recordkeeping and Reporting Requirements on Certain Money Services Businesses Along the Southwest Border</u>**

On September 8, 2025, FinCEN renewed, with modifications, a Geographic Targeting Order (GTO) requiring certain money services businesses (MSBs) to file additional Currency Transaction Reports (CTRs) with FinCEN.  As modified, the reissued GTO requires MSBs located in certain counties and ZIP Codes in Arizona, California, and Texas near the southwest border (Covered Businesses) to file CTRs for cash transactions of $1,000 or more.

The terms of the GTO are effective September 10, 2025, through March 6, 2026.  However, MSBs that were not required to report under the GTO published by FinCEN on March 14, 2025, have until October 10, 2025, to comply with the terms of this reissued GTO.  In addition, the filing deadline for all reports filed under this GTO is 30 days after the date on which the transaction takes place, instead of the usual 15 days for CTRs.

To assist Covered Businesses in complying with the GTO, FinCEN is disseminating this list of Frequently Asked Questions (FAQs).  These FAQs are applicable only to this GTO, as reissued, and should not be construed to apply to any FinCEN regulation or other order, including other GTOs.

To file a CTR on a Covered Transaction, please use the BSA E-Filing System.[1]  If you would like additional information pertaining to E-Filing, please reference the E-Filing Support Center[2] and the User Guide.[3]  For additional questions, please contact the FinCEN Regulatory Support Section at www.fincen.gov/contact.

1) **What is a Geographic Targeting Order (GTO)?**

   A GTO is an order issued by FinCEN under the Bank Secrecy Act (BSA)[4] that imposes additional recordkeeping or reporting requirements on domestic financial institutions or other

---

[1] The BSA E-Filing Systems may be found at https://bsaefiling.fincen.treas.gov/main.html.
[2] The BSA E-Filing Support Center may be found at https://bsaefiling.fincen.treas.gov/Help.html.
[3] The User Guide may be found at https://bsaefiling.fincen.treas.gov/docs/XMLUserGuide_FinCENCTR.pdf.
[4] The BSA, as amended, is the popular name for a collection of statutory authorities that FinCEN administers that is codified at 12 U.S.C. 1829b, 1951–1960 and 31 U.S.C. 5311–5314, 5316–5336, and includes other authorities reflected in notes thereto.  Regulations implementing the BSA appear at 31 CFR Chapter X. Pursuant to Treasury Order 180–01 (Jan. 14, 2020), the authority of the Secretary of the Treasury to administer the BSA, including, but not limited to, 31 U.S.C. 5326, has been delegated to the Director of FinCEN.

businesses in a specific geographic area.[5] To issue a GTO, FinCEN must reasonably conclude that the additional requirements are necessary to carry out the purposes of the BSA or prevent evasions thereof. A GTO may not exceed 180 days, but may be renewed as necessary.

2) **Why did FinCEN issue the GTO?**

Combatting drug cartels and stopping the flow of deadly drugs into the United States is one of the Administration's highest priorities. On January 20, 2025, President Donald J. Trump issued Executive Order (E.O.) 14157, creating a process by which certain cartels and other organizations would be designated as Foreign Terrorist Organizations (FTOs) or Specially Designated Global Terrorists (SDGTs).[6] Accordingly, on February 20, 2025, the U.S. Departments of the Treasury and State designated eight organizations, including six major Mexico-based drug cartels, as FTOs and SDGTs.[7] These designations will allow the United States to take further steps to deny individuals and entities associated with these groups access to the U.S. financial system.

The GTO is designed to both inform those further steps and to support work to counter drug trafficking organization activity and transnational criminal organization activity, which are two of the United States' National AML/CFT Priorities.[8] The information reported under this GTO will help Treasury and its law enforcement partners identify cartel-related money laundering and conduct targeted investigations of suppliers and facilitators that enable the flow of deadly drugs, such as fentanyl, into the United States.

3) **What does the GTO require Covered Businesses to do?**

The terms of this GTO are effective September 10, 2025, through March 6, 2026. The GTO provides a 30-day compliance period for MSBs that were not required to report under the March GTO; such MSBs will not need to begin filing reports until October 10, 2025. The GTO also extends the report filing deadline for all MSBs from the standard 15 days for Currency Transaction Reports to 30 days, for the entire period of the order.

Covered Transactions are transactions in which Covered Businesses engage in deposits, withdrawals, exchanges of currency, or other payments or transfers, which involve transactions of $1,000 or more, but not more than $10,000.

---

[5] 31 U.S.C. 5326; 31 CFR 1010.370.
[6] Executive Order 14157, "Designating Cartels and Other Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists," 90 FR 8439 (Jan. 20, 2025), https://www.federalregister.gov/documents/2025/01/29/2025-02004/designating-cartels-and-other-organizations-as-foreign-terrorist-organizations-and-specially.
[7] U.S. Department of State, *Designation of International Cartels* (Feb. 20, 2025), https://www.state.gov/designation-of-international-cartels/; *see also* U.S. Department of the Treasury, Office of Foreign Assets Control, *Democratic Republic of the Congo-related Designations; Counter Terrorism Designations; Counter Narcotics Designations Updates* (Feb. 20, 2025), https://ofac.treasury.gov/recent-actions/20250220.
[8] FinCEN, *National AML/CFT Priorities* (June 30, 2021), https://www.fincen.gov/news/news-releases/fincen-issues-first-national-amlcft-priorities-and-accompanying-statements.

2

The GTO does not alter any existing BSA obligation of Covered Businesses (as defined in the GTO), except as otherwise noted in the order itself. Thus, for example, Covered Businesses must continue to file, and in accordance with the BSA and applicable regulations, CTRs for transactions in currency above $10,000 and Suspicious Activity Reports (SARs) where appropriate.

Although the dollar thresholds for filing SARs in the SAR regulation applicable to Covered Businesses remain the same (*i.e.*, transactions that involve or aggregate to at least $2,000),[9] FinCEN encourages the voluntary filing of SARs where appropriate to report transactions conducted to evade the threshold imposed by the GTO.

4) **How do I know if my business is a Covered Business?**

   For purposes of the GTO, "Covered Business" means an MSB (regardless in which capacity it is engaged in money services) located in the Covered Geographic Areas (identified in the GTO and listed in FAQ #6), except, for the period during which an applicable injunction remains in force, any money services business to which the government is enjoined by court order from applying the Geographic Targeting Order published by FinCEN on March 14, 2025 (90 FR 12106). *(See* FAQ #5 for further information on MSBs excluded from this definition.)

   As defined in 31 CFR 1010.100(ff), MSBs include certain dealers in foreign exchange, check cashers, issuers or sellers of traveler's checks or money orders, providers or sellers of prepaid access, and money transmitters, as well as the U.S. Postal Service.

5) **Court orders prevent FinCEN from applying the March 14, 2025 GTO to certain MSBs, including all Covered Businesses in Imperial County and San Diego County, California. Does the reissued GTO apply to MSBs covered by these court orders?**

   FinCEN will not apply the reissued GTO to these MSBs so long as the relevant court orders remain in place. These MSBs will be required to comply with the reissued GTO, however, if these orders are lifted.

6) **What geographic areas are covered by the GTO?**

   Covered Businesses located in the following Covered Geographic Areas[10] are required to report under the GTO:

   (1) Santa Cruz County, Arizona;

   (2) Yuma County, Arizona;

   (3) Imperial County, California ZIP Codes: 92231, 92249, 92281, 92283;

   (4) San Diego County California ZIP Codes: 91910, 92101, 92113, 92117, 92126, 92154, 92173;

---

[9] 31 CFR 1022.320.
[10] *See* FAQ #5.

3

    (5) Cameron County, Texas;

    (6) El Paso County, Texas;

    (7) Hidalgo County, Texas;

    (8) Maverick County, Texas; and

    (9) Webb County, Texas.

7) **What methods of payment are covered under the GTO?**

   Covered Transactions include all transactions potentially reportable on a CTR, modified only with respect to the dollar threshold for reporting. More specifically, for purposes of the GTO, a "Covered Transaction" means each deposit, withdrawal, exchange of currency, or other payment or transfer, by, through, or to the Covered Business that involves a transaction in currency, $1,000 or more, but not more than $10,000. Currency, as defined in 31 CFR 1010.100(m), includes coin and paper money of the United States or any other country that is designated as legal tender and that circulates and is customarily used and accepted as a medium of exchange in the country of issuance.

8) **How are the requirements for Covered Businesses under the GTO different than the standard CTR filing for MSBs?**

   Unlike the standard CTR reporting threshold of over $10,000, Covered Businesses are required to report transactions of $1,000 or more, but not more than $10,000, and must record the term "MSB0925GTO" in Field 45 of Part IV.

9) **Does the GTO require Covered Businesses to change practices and procedures related to aggregation?**

   Except as set forth in FAQ #10, nothing in the GTO requires Covered Businesses to alter existing policies and procedures relating to currency aggregation. Pursuant to 31 CFR 1010.313, Covered Businesses are required to treat multiple currency transactions be treated as a single transaction if the financial institution has knowledge that the transactions are by or on behalf of any person and result in either cash in or cash out totaling more than $10,000 during any one business day (or in the case of the U.S. Postal Service, any one day). Therefore, for purposes of filing a CTR, Covered Businesses are required to treat multiple currency transactions as a single transaction only if the transactions exceed $10,000.

10) **What if two transactions occur within the same day, aggregating more than $10,000, with one occurring in the Covered Geographic Area and one outside of it? For example, if $5,000 in foreign currency is exchanged in the covered Geographic Area, and $6,000 in foreign currency is exchanged outside of the Covered Geographic Area on the same day by the same person?**

    In this scenario, the Covered Business must either: (1) file a CTR under the terms of the GTO to report the $5,000 transaction (and include the GTO keyword in such CTR) and a second CTR under normal reporting requirements to report the aggregated $11,000 transaction; or

4

(2) file a single, aggregated CTR that includes the GTO keyword. The Covered Business may choose the option it prefers.

11) **Are all cash transactions at businesses that are MSBs reportable?**

   Businesses that are MSBs may offer additional services other than those that make the business an MSB. Services offered in a business's capacity as an MSB are: (1) dealing in foreign currency; (2) cashing checks; (3) issuing or selling traveler's checks or money orders; (4) providing or selling prepaid access; or (5) providing money transmission services.[11] Reporting under the GTO is required only for these services, and MSBs do not need to file CTRs covering transactions involving other services they offer. For example, the GTO would not apply to the sale of goods.

12) **Does the GTO alter which businesses are MSBs?**

   No. Nothing in the GTO alters the definition of "money services business" codified in 31 CFR 1010.100(ff), including activity thresholds where applicable.

13) **Are MSBs required to register with FinCEN?**

   MSBs must register with FinCEN. However, a person that is an MSB solely because that person serves as an agent of another MSB is not required to register. A person that is an MSB both because it engages in MSB activities on its own behalf and as an agent of another MSB must register.

   For registration information, see here.

14) **What if a customer does not have a Social Security Number (SSN)?**

   For persons reported on a CTR, a tax identification number (TIN) must be provided in Field 15. The TIN may be either a U.S. TIN, such as an SSN, or a foreign TIN. If unknown, "unknown" may be clicked.

15) **Is a CTR required under the GTO when a customer, as part of one sale, presents a $950 check for payment in cash and also exchanges $950 in foreign currency?**

   No. The separate transactions in currency are each below the $1,000 reporting threshold for the GTO, and aggregation is not required at that amount under the GTO, even if the MSB processes the two transactions in currency as part of a single sale of its services.

16) **Is a CTR required when a person presents a check for $1,000 for payment in cash at an MSB and receives less than $1,000 after fees or other deductions are charged against the amount of the check?**

   The GTO only requires the filing of a CTR for a transaction in currency, such as a deposit, withdrawal, exchange, or transfer of currency, of $1,000. A transaction in currency involves

---

[11] 31 CFR 1010.100(ff).

5

the physical transfer of currency from one person to another. Accordingly, the transfer of currency below $1,000 would not trigger the CTR requirement, despite the amount of the check. For example, if a person cashed a check for $1,010 and received $990 after a service fee was charged against the amount of the check, the MSB would not be required to file a CTR. On the other hand, if a person purchased a cashier's check for $990 and paid in cash a service fee of $20 for a total of $1,010 in cash, the MSB would be required to file a CTR. The key number to consider is the amount of the physical deposit, withdrawal, exchange, or transfer of currency.

17) **Are money transfer refunds, where the MSB refunds "sent" transactions back to the customer (e.g., because the payout location did not have the required funds to satisfy the sent amount) included in the GTO?**

    No. If the customer originally funded the money transfer with cash, that transaction may be subject to reporting under the GTO. However, a money transfer refund is not a separate transaction and is therefore not required to be reported under the GTO.

18) **Does the GTO apply to MSBs involved in convertible virtual currency (CVC) transactions?**

    Any MSB that is involved in a transaction in currency may need to report such transactions under the GTO, including the physical exchange or transfer of fiat currency and CVC.

19) **How do Covered Businesses file the CTR?**

    Covered Businesses filing a CTR pursuant to the GTO must e-file the report through the BSA E-Filing System.[12] If the Covered Business is already enrolled in the E-Filing System, please login[13] as you normally would to file a CTR.

    If the Covered Business is not enrolled in the E-Filing system, you will need to enroll and establish an account before filing a CTR.[14] The Covered Business will need to create a Login.gov account (if it has not already done so) and ensure that the same email address (entered during BSA E-Filing account enrollment/registration) is associated with both accounts. In order to file BSA data on behalf of an institution (*i.e.*, filing organization), the person that will serve as the liaison between BSA E-Filing and the filing organization (for the purposes of the GTO, the Covered Business) must enroll as the initial Supervisory User on behalf of the organization.

    To enroll, please complete the supervisory user registration process.[15] The Covered Business will need to:

---

[12] The BSA E-Filing System may be found at https://bsaefiling.fincen.treas.gov/main.html.
[13] The login for the BSA E-Filing System may be found at https://bsaefiling.fincen.gov/PublicAccess
[14] To enroll in the BSA E-Filing System, please do so at https://bsaefiling.fincen.treas.gov/Enroll_Now.html.
[15] The supervisory user registration process may be completed at https://bsaefiling.fincen.gov/AddUser.

6

(a) Identify your organization's point of contact to be designated as the Supervisory User for BSA E-Filing;[16]

(b) Have this person complete and submit the Supervisory User Registration form;[17] and

(c) Obtain the credentials (username and password) to login to the BSA E-Filing System.

For additional information about each stage of the enrollment process, please reference the Enroll[18] page. Please also note that you will need to meet certain systems requirements in order to use the BSA E-Filing site. If you would like information about system requirements or downloading Adobe Reader, please see the System Requirements[19] page and the Downloading Adobe Reader[20] page. Training that describes the entire E-Filing process is available on FinCEN's website.[21]

After you have enrolled and created your account, you will log in to the E-Filing System to file a CTR.

If you would like additional information pertaining to e-filing, please reference the E-Filing Support Center[22] and the User Guide.[23] For additional questions, please contact the FinCEN Resource Center at www.fincen.gov/contact.

20) **How long must Covered Businesses retain records relating to compliance with the GTO?**

Covered Businesses must retain all records relating to compliance with the GTO for at least five years from the last day that the GTO is effective. These records include all reports filed pursuant to the GTO.

21) **How can Covered Businesses access the proper CTR?**

A sample CTR template is located at this link. If opening this link in Chrome, please note that you must click the download icon in the top right; once downloaded, you may open the PDF using Adobe Reader. This Adobe PDF template can be saved as a local copy on a device and reused.[24] Multiple versions may be created from this PDF by saving each version

---

[16] An organization may designate its Supervisory User point of contact at https://bsaefiling.fincen.treas.gov/InitialUserDesignation.html.
[17] The Supervisory User point of contact may register at https://bsaefiling.fincen.gov/AddUser.
[18] Additional information about each stage of the enrollment process may be found at https://bsaefiling.fincen.treas.gov/Enroll_Now.html.
[19] Information about system requirements or downloading Adobe Reader may be found at https://bsaefiling.fincen.treas.gov/SystemRequirements.html.
[20] Information about system requirements or downloading Adobe Reader may be found at https://bsaefiling.fincen.treas.gov/DownloadAdobeIns.html.
[21] Training that describes the entire e-filing process is available at https://sdtmut.fincen.treas.gov/docs/PrivateSide_Modernization_TrainingGuide.pdf.
[22] Additional information pertaining to E-filing may be found at https://bsaefiling.fincen.treas.gov/Help.html.
[23] The User Guide may be found at https://bsaefiling.fincen.treas.gov/docs/XMLUserGuide_FinCENCTR.pdf.
[24] In order to reuse the PDF template, you may need to save a blank version or manually delete any information added to the template.

7

with a unique file name. Once a Covered Business has filled out the template for a Covered Transaction and after confirming that the term "MSB0925GTO" is recorded in Field 45 of Part IV, the Covered Business will enter their unique 8-digit PIN on the report template to electronically sign the report (to obtain the PIN, the Covered Business must login to BSA E-Filing and select Account Management > Manage PIN). After signing the report with the PIN, the Covered Business must save a local copy of the signed report to a secure network directory. To submit the signed and saved report, the Covered Business must login to the BSA E-Filing System and click "File Now" from the homepage to access the File FinCEN Reports page. The Covered Business must select the browse option under the Submit BSA Report section on the File FinCEN Report page and attach the signed report. Once the signed report is attached to the page, the Covered Business must re-enter their PIN and click Submit. A confirmation message is displayed immediately and a confirmation email is delivered to the Covered Business soon after.

**22) What are the penalties for violating the GTO?**

A business that willfully violates a GTO (and any partner, director, officer, or employee thereof who willfully participates in the violation) may be liable for the following civil and criminal penalties:

- Civil Penalties: The greater of either (i) $71,545 or (ii) the amount involved in the transaction (up to $286,184).[25] A separate penalty may be applied for each violation.

- Criminal Penalties: A fine of not more than $250,000 and/or imprisonment for not more than 5 years.[26]

**23) If an MSB is located in one of the counties or ZIP Codes that is subject to the GTO, does that mean that FinCEN or law enforcement is investigating it for money laundering or other crimes?**

The application of the GTO only means that the business has been identified as a Covered Business (*i.e.*, an MSB located in the Covered Geographic Area) for the purposes of the GTO.

**24) If I run a business in the counties or ZIP Codes covered, but the business does not meet the definition of a Covered Business, what should I do?**

If a business does not meet the definition of a Covered Business as defined in the GTO, the business does not need to report information or file any forms with FinCEN pursuant to the GTO. A business may be asked to provide information to FinCEN to verify that it does not meet the criteria of a Covered Business.

---

[25] 31 U.S.C. 5321(a)(1); 31 CFR 1010.821; FinCEN, *Inflation Adjustment of Civil Monetary Penalties,* 90 FR 5629 (Jan. 17, 2025).
[26] 31 U.S.C. 5322; 31 CFR 1010.840.

25) **How do I download Adobe Reader and check my system requirements?**

   Please see the System Requirements[27] page and the Downloading Adobe Reader[28] page.

26) ****This question ONLY applies to filers who are already a) enrolled in the BSA E-Filing System and b) are able to batch file their CTRs in XML format: May I file CTRs that respond to this GTO in a batch XML file?**

   If a Covered Business is already enrolled in the BSA E-Filing System and already has the capability to batch file, the Covered Business may choose to include a Covered Transaction report within a batch XML file while ensuring that the phrase "MSB0925GTO" appears in the corresponding element for the Part IV Filing Institution Field 45. If including the report in a batch XML file, please be aware that Covered Businesses must report a Covered Transaction to FinCEN within 30 days of the Covered Transaction.

   **NOTE**: When submitting the report, the Covered Business may receive a warning that the transaction is below $10,000. The Covered Business shall ignore the warning and continue with the submission.

27) **What if I have additional questions?**

   Any questions about the GTO should be directed to www.fincen.gov/contact.

---

[27] The system requirements may be found at https://bsaefiling.fincen.treas.gov/SystemRequirements.html.
[28] Adobe Reader may be downloaded at https://bsaefiling.fincen.treas.gov/DownloadAdobeIns.html.

9